AARON C. FISHER ET AL. v. JAMES C. HALL,
JAMES CARR ET AL.

*Judgment creditors—Bill in aid of execution—Obligation to submit to garnishment.*

A bill in aid of execution against lands sold by a judgment debtor cannot be maintained against the purchaser if the evidence does not show that he purchased fraudulently.

One who has in good faith contracted to buy land, and has no notice of any claims existing against the other party, nor any knowledge as to his ability to meet them, is not bound to await process on being afterwards notified that the latter's creditors wish to garnish him, but may complete the purchase and pay over the consideration without reference to the creditors.

Appeal from Kalamazoo. Submitted October 20. Decided October 27.

BILL in aid of execution. Dismissed below on proofs. Complainants appeal. Decree affirmed.

*Clapp & Reynolds* and *George M. Buck* for complainants. One who aids a judgment debtor to escape payment, by purchasing his property, is a proper defendant to a bill in aid of execution even though he paid full price: 1 Story's Eq. Jur., § 369; *Clements v. Moore* 6 Wall. 299; *Swinford*

v. *Rogers* 23 Cal. 234; *Robinson v. Holt* 39 N. H. 557;
*Chapel v. Clapp* 29 Iowa 191; so is a contract purchaser
who has notice of complainants' equities before the purchase
is completed, although he may have paid a portion of the
consideration: Bump. Fr. Conv. 483; *Thomas v. Stone*
Walk. Ch. 117; *Dixon v. Hill* 5 Mich. 404; *Warner v.
Whittaker* 6 Mich. 133; *Blanchard v. Tyler* 12 Mich. 339;
*Stone v. Welling* 14 Mich. 514; *Jewett v. Palmer* 7 Johns.
Ch. 65; *English v. Waples* 13 Ia. 57.

*O. S. Clark* and *Henry C. Briggs* for defendants.

MARSTON, C. J.   Complainants, claiming to be judgment
creditors of defendant Hall, filed their bill in this case in aid
of an execution levied upon a certain piece of land which they
claimed had been fraudulently conveyed to defendant Carr.
The evidence relied upon by complainants, if standing alone,
would not entitle them to the relief sought, as it fails to show
Carr a fraudulent purchaser; besides it is in the most import-
ant portions contradicted by that of the defendants.   While
we do not consider it at all necessary to discuss questions of
fact, we may briefly refer to one or two leading points in
this case.

It appears beyond dispute that Hall had for some time
prior to the sale been endeavoring to sell this property and
had placed it in the hands of a real estate agent for such pur-
pose, and of this no secret was made.   It farther appears
that Carr some months prior to the purchase had moved with
his family into the vicinity of the farm and was seeking such
a place for purchase; that he had been negotiating with Hall
and his agent for some weeks for the purchase of this land,
and on the 10th day of January, 1878, a bargain was made.
The price agreed upon was $2200, and no one questions
the fairness of this; the amount of a mortgage thereon,
$1200, with interest and taxes, was to be deducted and assumed
by the grantee, and the balance paid in cash.   A deed was made
out, executed and placed in the hands of an attorney; ten dol-
lars cash was paid, the title was to be examined the next day

and if found satisfactory the deed was then to be delivered and the full cash consideration to be paid. On the 11th the title was examined and the parties then agreed to meet at the attorney's office the following morning at ten o'clock to pay over the money and receive the deed.

The attorneys for complainants on the evening of January 11th ascertained that a sale, as above set forth, had been made and that the consideration was to be paid the next morning, and then made arrangements to sue Hall and garnishee Carr. On the next morning while such judicial proceedings were being commenced, an officer was sent to notify Carr that they desired to garnishee him; and complainants claim, but this Carr denies, that Carr agreed to meet the officer at a certain time and place to give an opportunity for service of the garnishee papers, but that, instead of so doing, he went to a different place, met Hall and paid him, and then represented to the officer that he had received his deed when in fact he had not. This last fact Carr does not dispute. That the money was paid over and the deed delivered on that forenoon is not questioned. The garnishee proceedings were then abandoned, and attachment against Hall sued out and a levy made upon this land. This bill is filed in aid of the execution levy upon the judgment recovered in the cause so commenced by attachment.

It is worthy of notice that the first intimation Carr had that any person had a claim against Hall was on January 12th. This was after he had made an arrangement to purchase this place, had made a small payment thereon, and was then ready to pay the balance in the course of an hour or two and receive his deed.

That Carr up to this time had been acting with entire good faith no one doubts, and, under such circumstances, how far he could be considered under any legal or moral obligation to assist Hall's creditors in the collection of their debts, by giving him an opportunity to put him to the trouble and expense of a garnishee suit, we are unable to see. If a person intending in good faith to purchase land can be thus prevented from closing up the transaction according to his

agreement, or subjected to litigation or to have his title questioned thereafter, serious results and embarrassments would follow. If under such a state of circumstances Carr owed a duty to any one, it was to carry out and conclude his agreement with Hall by paying the balance of the consideration and receiving his deed, and not by collusion or agreement with Hall's creditors assist them in collecting their debt.

But there is no evidence tending to show that Carr at any time had any knowledge whatever of Hall's pecuniary responsibility, while there is direct evidence that he had no such knowledge. Carr could not and would have no right to assume that Hall was making this sale to hinder, delay or defraud his creditors in the collection of their debts, or that he had not abundant means to pay all his debts, or that he did not design out of the consideration received for this land to pay the debt in question.

While the evidence tends to show that Hall did not own other real estate, it does not clearly appear that he did not own personal property, but without reference to this it is clear that Carr had no such knowledge.

We need not pursue farther this matter. The decree dismissing the bill must be affirmed with costs.

The other Justices, concurred.